SCHAUMBURG STATE BANK, Plaintiff-Appellee, *v.* WALTER J. SEYFFERT *et al.,* Defendants-Appellees.—(UNITED STATES OF AMERICA, Defendant-Appellant.)

First District (5th Division)   No. 78-1479

Opinion filed May 4, 1979.

M. Carr Ferguson, Assistant Attorney General, and Gilbert E. Andrews, Crombie J. D. Garrett, and Wynette J. Hewett, all of Department of Justice, all of Washington, D. C. (Thomas P. Sullivan, U. S. Attorney, and Mary Agnes Thomas, Assistant U. S. Attorney, of counsel), for appellant.

Lester Asher and Eugene I. Pavalon, both of Asher, Greenfield, Goldstein, Pavalon & Segall, Ltd., of Chicago (Daniel A. Zazove and David P. Leibowitz, both of Schwartz, Cooper, Kolb & Gaynor, Chartered, of counsel), for appellee Chicago Federation of Musicians.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendant, United States of America (U.S.A.), appeals from orders granting summary judgment to co-defendant, Chicago Federation of Musicians, Local 10-208 (Union), and approving a decree for private sale of certain real estate. On appeal, U.S.A. contends that the trial court

erroneously declared a Federal tax lien void and thereby subordinated it to a subsequent judgment lien on either of two grounds: (1) because Rule 601 of the Rules of Bankruptcy Procedure (11 U.S.C. (1976)) prohibits perfection of a tax lien after filing of a voluntary petition for bankruptcy; or (2) because the underlying tax liability had been discharged in bankruptcy.

On December 13, 1977, plaintiff, Schaumburg State Bank, brought suit against Walter J. and Ruby A. Seyffert to foreclose a mortgage executed by them on May 15, 1976, and recorded on May 24, 1976. U.S.A., American National Bank and Trust Company of Chicago (American National), the Union, Western Illinois University (Western), Woodfield Bank (Woodfield), and Unknown Owners were named as defendants who might have some right, title, interest or lien in the subject real estate. The complaint also stated that U.S.A. had filed a notice of tax lien against Walter J. Seyffert in the amount of $14,747.84. From a later amendment to the complaint, it appears that this notice was filed in the recorder's office on February 25, 1977, as document number 23831506.

Woodfield did not admit or deny the allegations of the complaint but claimed to be judgment lien creditor of Ruby A. Seyffert in the amount of $2,079.16 by filing a copy of the judgment in the recorder's office on February 25, 1977, as document number 23832210.

Western claimed to be a judgment lien creditor of Ruby A. Seyffert in the amount of $474.25, a copy of which was filed with the recorder's office as document number 24121942.

U.S.A. answered that it claimed an interest in the property by reason of the assessment, demand, and notice of tax lien filed as alleged in Schaumburg's complaint. It denied that its claim was subordinate to plaintiff's claim and sought to have the property sold and the funds distributed to the competing parties according to their priorities as the court would determine.

An order of default was entered against the Seyfferts, American National, and the unknown owners for their failure to answer. Schaumburg then moved for summary judgment against the U.S.A. contending that since it had recorded first, its lien was superior to U.S.A.'s. Summary judgment was granted. That order is not challenged in this appeal.

The Union then answered Schaumburg's complaint, claiming to be a judgment lien creditor of Walter J. Seyffert in the amount of $49,691.25 by reason of nondischargeable judgment entered on July 21, 1977, by the bankruptcy court in Walter Seyffert's bankruptcy proceeding.[1] A

---

[1] Although not a part of this record, it appears from appellant's brief that the real property subject to the foreclosure suit was not part of the bankruptcy estate since the proceeding was closed as a "no asset" case.

memorandum of this judgment was filed with the recorder of deeds on July 21, 1977, as document number 24023209. The Union also moved for summary judgment against U.S.A. contending that: (1) the filing of the notice of Federal tax lien after Walter Seyffert's filing of a voluntary petition for bankruptcy violated Rule 601(a) of the Rules of Bankruptcy Procedure (11 U.S.C. (1976)), and the tax lien was of no force; and (2) the tax indebtedness of Walter Seyffert was discharged in the prior bankruptcy proceeding, citing *In re Sotelo* (7th Cir. 1977), 551 F.2d 1090.

The trial court entered an order granting Union's motion for summary judgment on March 30, 1978, finding that: "The filing of the notice of lien on February 25, 1977, without authorization of the Bankruptcy Court, was a void act in violation of Bankruptcy Rule 601" and declaring the lien void and thereby discharged. A motion to reconsider and set aside this order was denied on April 28, 1978.

On May 26, 1978, Schaumburg filed a motion for a decree approving a private sale in lieu of foreclosure and attached a copy of a real estate contract entered into by the Seyfferts and certain purchasers. An order was entered June 5, 1978, denying U.S.A.'s motion for the trial court to reconsider the order of summary judgment for the Union, deny the decree for a private sale, and declare the real estate contract void.

On June 5, 1978, the trial court then entered a decree approving the private sale, that the U.S.A. had no lien upon the real estate[2] and that the sale proceeds be disbursed to plaintiff and the lien creditors as set forth in plaintiff's motion. U.S.A. brings this appeal seeking to have: (1) the private sale set aside; (2) the priorities of all parties reestablished; and (3) a judicial sale of the property and dismissal of Schaumburg's complaint.[3]

OPINION

U.S.A. attacks the two apparent bases for the trial court's order granting summary judgment for Union: (1) that the tax liability of the debtor had been discharged in bankruptcy; and (2) Rule 601(a) of the Rules of Bankruptcy Procedure prohibits perfection of the tax lien after the filing of the petition for bankruptcy.

■■ Although there may have been support for the trial court's order on the basis that Seyffert's tax liability had been discharged in bankruptcy, it is clear that this is not now the law. At the time of the order, *In re Sotelo* (7th Cir. 1977), 551 F.2d 1090, held that the taxpayer's liability under Internal Revenue Code section 6672 (26 U.S.C. §6672 (1976)), the section

---

[2] The property was sold for $77,000. The amounts to be distributed included: (1) Schaumburg—mortgage payment $40,455.99; (2) Western $572.50; (3) Woodfield $2,340.95; and (4) Union $26,540.32.

[3] Only U.S.A. and the Union have filed briefs on appeal. In its brief U.S.A. states that it is immaterial whether Woodfield's and Western's judgments are subordinated to the tax lien, since the proceeds are sufficient to cover all three.

under which Mr. Seyffert's liability arose, was a penalty and not a tax, and was therefore discharged under section 17a(1) of the Bankruptcy Act. (11 U.S.C. §35(a)(1) (1976).) The Supreme Court reversed the court of appeals, holding that the tax liability was not dischargeable under Bankruptcy Act §17a(1)(e). (*United States v. Sotelo* (1978), 436 U.S. 268, 56 L. Ed. 2d 275, 98 S. Ct. 1795.) As both parties concede, the trial court's order cannot be justified on the ground that the tax liability was discharged in bankruptcy.

The remaining justification is that Rule 601(a) of the Rules of Bankruptcy Procedure (11 U.S.C. (1976)) prohibits perfection of the tax lien after the filing of the petition for bankruptcy. That rule provides:

> "(a) *Stay Against Lien Enforcement.* The filing of a petition shall operate as a stay of any act or the commencement or continuation of any court proceeding to enforce (1) a lien against property in the custody of the bankruptcy court, or (2) a lien against the property of the bankrupt obtained within 4 months before bankruptcy by attachment, judgment, levy, or other legal or equitable process or proceedings."

The Advisory Committee's note to this section makes it clear that the purpose of the rule is "to protect creditors against prejudicial dismemberment and disposition of the estate before a trustee or receiver can qualify."

U.S.A. contends that a distinction is drawn between enforcing a lien which would interfere with the administration of the bankruptcy estate and merely perfecting a lien to preserve priority *vis a vis* other creditors. It is argued that since there is no interference with the debtor's property by perfection of the tax lien, the purpose of Rule 601(a) is fulfilled. Union maintains that "any act" to enforce a lien is prohibited.

U.S.A. cites *United States v. A Certain Parcel of Land* (D. Mass. 1944), 59 F. Supp. 65, in support of its position. Regarding this issue the court said:

> "The recording of the notice of lien did not, in my opinion, constitute 'any act or other proceeding to enforce a lien,' but rather established or perfected the lien. I do not feel that Congress intended, by section 548, to stay or prevent the establishment or perfection of a lien." 59 F. Supp. 65, 69.

This same issue was recently raised under the stay provisions of Rule 11—44 of the Rules of Bankruptcy Procedure (11 U.S.C. (1976)) which is applicable in Chapter XI proceedings under the Bankruptcy Act (11 U.S.C. §§701-99 (1976)) in the case of *In re Marietta Baptist Tabernacle, Inc.* (5th Cir. 1978), 576 F.2d 1237. The court held that recording a notice of a claim of lien does not constitute an act to enforce, but merely preserves the lien and does not dispose of property.

Rule 11—44 and Rule 601 which is involved in this case are similar in their provisions and purpose (see *Baum v. Anderson* (5th Cir. 1976), 541 F.2d 1166), and we feel the interpretation of the former is applicable to the latter. We agree with this reasoning and find that the filing of the notice of tax lien in the instant case did not act to dismember the assets in bankruptcy, but perfected U.S.A.'s position as a lien creditor and as such was not an attempt to enforce a lien.

However, U.S.A. in the present case not only perfected its lien after the bankruptcy petition was filed, but also created the lien afterwards. Internal Revenue Code section 6322 (26 U.S.C. §6322 (1976)) provides:

> "Unless another date is specifically fixed by law, the lien imposed by section 6321 [dealing with liens for nonpayment of taxes] shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."

In order to perfect this tax lien against certain persons, Internal Revenue Code section 6323 (26 U.S.C. §6323 (1976)) requires the further step of notice filing, which, in the case of real estate, must be filed under State law in the recorder's office of the county where the property is located.

In the instant case the bankruptcy petition was filed on February 4, 1977, the tax assessment made on February 21, 1977, and the notice filed on February 25, 1977. U.S.A. was not only perfecting a lien after the bankruptcy petition but did not cause the lien to arise until the assessment on February 21, 1977. Until that time, U.S.A. had a potential claim for taxes against Mr. Seyffert. There is a question of whether the act of assessment by U.S.A. is prohibited by the stay in the Bankruptcy Court. Rule 401 of the Rules of Bankruptcy Procedure (11 U.S.C. (1976)) provides for the stay of actions founded on an unsecured provable debt as opposed to enforcement of a lien which Rule 601 addresses. Rule 401(a) provides:

> "Stay of Actions. The filing of a petition shall operate as a stay of the commencement or continuation of any action against the bankrupt, or the enforcement of any judgment against him, if the action or judgment is founded on an unsecured provable debt other than one not dischargeable under clause (1), (5), (6), or (7) of section 35(a) of this title."

This rule would not stay the assessment of the tax debt since this liability is nondischargeable under section 17a(1)(e) of the Bankruptcy Act (11 U.S.C. 35(a)(1)(e) (1976)). (*United States v. Sotelo* (1978), 436 U.S. 268, 56 L. Ed. 2d 275, 98 S. Ct. 1795.) It is also noted that Internal Revenue Code §6871(a) (26 U.S.C. §6871(a) (1976)) expressly provides

for immediate assessment of tax deficiencies upon the filing of a petition for bankruptcy. These two provisions make it clear that the assessment of the tax deficiency after the filing of the bankruptcy petition was not prohibited by Rule 401 of the Rules of Bankruptcy Procedure.

At oral argument, Union contended that under the Revised Bankruptcy Act, Act of November 6, 1978, Pub. L. No. 95-598, 92 Stat. 2549, to be codified in 11 U.S.C., effective October 1, 1979, the action taken by U.S.A. would be prohibited by the stay provisions of section 362 and that this section was intended to be declarative of existing law. An examination of section 362 and the legislative history of the act shows that the assessment and recording of the tax lien in the instant case would be prohibited under the Revised Bankruptcy Act. However, that act is not applicable to the present case. In addition, the major purpose of the act is the modernization of the bankruptcy laws. (See H. R. Rep. No. 95-595, 95th Cong., 2d Sess. 3, reprinted in [1978] U. S. Code Cong. & Ad. News, Bankruptcy Law Revision, 179, 181; S. Rep. No. 95-989, 95th Cong., 2d Sess. 2, reprinted in [1978] U. S. Code Cong. & Ad. News, Bankruptcy Law Revision, 3, 4.) Concerning the automatic stay of section 362 the House Report noted:

> "The automatic stay in H. R. 8200 [section 362] differs in some ways from the stays provided by the Rules of Bankruptcy Procedure today. The new stay expands coverage in some areas, reduces it in others, and clarifies many uncertain aspects of the current provisions." H. R. Rep. No. 95-595, 95th Cong., 2d Sess. 174, reprinted in [1978] U. S. Code Cong. & Ad. News, Bankruptcy Law Revision, 179, 351.

■ Since the scope and purpose of the new stay provisions of section 362 are not identical with Rule 601, we defer to case law construing the latter and holding that perfection of a lien after the filing of the bankruptcy petition does not violate Rule 601. Since neither the assessment of taxes violated Rule 401(a) nor the filing of tax notice violated Rule 601(a), and the tax liability of Mr. Seyffert was not discharged in bankruptcy, the trial court erred in finding U.S.A.'s lien void.

Union argues that this appeal should be dismissed as moot since U.S.A. failed to seek a stay or supersedeas of the decree allowing private sale and distribution of the proceeds. Because of this it would be futile to accord the tax lien priority in property in which the debtor has no interest. Union relies on *First National Bank v. Road District No. 8* (1944), 322 Ill. App. 293, 54 N.E.2d 847, which admittedly supports their position. However, this case was reversed in *First National Bank v. Road District No. 8* (1945), 389 Ill. 156, 58 N.E.2d 884, where the court answered a similar contention as follows:

> "It is not reasonable to suppose that the legislature intended that a

judgment or decree for the payment of money should, upon its enforcement by execution or otherwise, in the absence of a *supersedeas* pending an appeal, become final and no longer subject to review, so as to require the dismissal of the pending appeal, notwithstanding provision is expressly made for the prosecution of an appeal without *supersedeas*. A party to a suit is presumed to know of all the errors in the record, and such party cannot acquire any rights or interests based on such erroneous decree that will not be abrogated by a subsequent reversal thereof. If such party has received benefits from the erroneous decree or judgment, he must, after reversal, make restitution, and, if he has sold property erroneously adjudged to belong to him, he must account to the true owner for the value. Titles acquired by parties to the record under an erroneous decree or judgment will be divested by the subsequent reversal of such decree or judgment. [Citations.] A party to a decree cannot acquire any rights thereunder while the same is subject to review which he can assert after the decree is reversed, since the effect of the reversal is to abrogate the decree and leave the cause as it stood prior to the entry of the decree." 389 Ill. 156, 161-62.

■ Union also cites Supreme Court Rule 305(i) (Ill. Rev. Stat. 1977, ch. 110A, par. 305(i)) as authority for its position. That rule specifically protects rights and interests of nonparties in the absence of a stay of judgment and would not protect the rights of Union, a party below, from reversal on appeal. Rule 305(i) and the *First National Bank* case are consistent and make clear that U.S.A.'s failure to seek a stay or supersedeas does not render this appeal moot.

We conclude that U.S.A. has a valid and subsisting lien on the subject property, superior and prior to the judgment lien of Union.

Accordingly, we reverse the trial court's orders of: (1) March 30, 1978, granting Union summary judgment against U.S.A. and declaring U.S.A.'s tax lien void; (2) April 28, 1978, denying U.S.A.'s motion to reconsider the order granting summary judgment; and (3) June 5, 1978, denying U.S.A.'s motion to deny plaintiff's motion for decree approving private sale. We vacate the decree of June 5, 1978, and remand the cause for further proceedings consistent with this opinion.

Orders reversed; decree vacated; and remanded.

LORENZ and WILSON, JJ., concur.